COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-09-030-CV

 

 

MARKEL INSURANCE COMPANY                                            APPELLANT

 

                                                   V.

 

JILL MUZYKA, INDIVIDUALLY AND                                           APPELLEE

AS NEXT FRIEND AND PARENT
OF

KENNEDY MUZYKA, A MINOR

 

                                              ------------

 

           FROM THE 348TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                           I.
INTRODUCTION








The sole legal issue presented in this appeal is
whether the trial court correctly determined that the medical expense claim of
Appellee Jill Muzyka, individually and as next friend and parent of Kennedy
Muzyka, a minor, was covered under an insurance policy issued by Appellant
Markel Insurance Company to the ASI Gymnastic Center.  For the reasons set forth below, we will
affirm the trial court=s judgment.

                          II.
FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of the pertinent facts in this
case is taken from an agreed statement of facts signed by the parties.[1]  On April 9, 2005, Kennedy attended a children=s
birthday party at the ASI Gymnastic Center. 
During the party, Kennedy participated in a game called Athe
helicopter.@ 
AThe
helicopter@ is a game in which an ASI
employee swings a large rope in a circle along the ground as children standing
in a circle attempt to jump over the rope. 
During the game, an ASI employee swung the rope too high, causing the
rope to hit Kennedy as she jumped.  The
force of the rope=s impact knocked Kennedy to the
floor and caused her to break her left arm. 
Kennedy required emergency and first aid medical care, x-rays, surgery,
nursing and professional medical services, as well as additional follow-up
medical attention.  Jill  incurred the medical expenses for Kennedy=s
injury.








At the time of Kennedy=s
injury, ASI held a commercial general liability policy issued by Markel.  The policy contained a section entitled ACoverage
C Medical Payments,@ which stated in pertinent part
that Markel would pay medical expenses for bodily injury caused by an accident
that occurred either on ASI=s
premises or because of ASI=s
operations.  The policy also contained an
exclusion providing that the medical payment provision under ACoverage
C Medical Payments@ did not apply to bodily injury
incurred by AParticipants, Students, and
Members while participating in Athletic, Sporting or Exercise Activities.@

Jill filed a claim with Markel for repayment of
Kennedy=s
medical expenses under ASI=s
insurance policy.  Markel declined to pay
and asserted that Athe helicopter@ game
was a ASporting
or Exercise Activit[y]@ excluded from coverage under
the policy.[2]  Jill subsequently sued Markel, seeking
recovery for medical expense payments, attorney=s fees,
and statutory violations.  The parties
agreed to try separately the issue of whether the policy exclusion applied to
Jill=s claim
for Kennedy=s medical expenses.  The parties also agreed that the issue was a
question of law and therefore submitted it to the trial court for judicial
determination by means of an agreed statement of facts.  See Tex. R. Civ. P. 263.








The parties= agreed
statement of facts provides that Kennedy=s injury
occurred while she was on premises owned by ASI and covered by the insurance
policy issued by Markel, during the insurance policy period, and in connection
with ASI=s
operations.  The parties further agreed
that the insurance policy did not contain a definition of AAthletic,
Sporting or Exercise Activities.@  The parties agreed that the purpose of the
birthday party was to celebrate a young girl=s
birthday by playing games for fun, that Athe
helicopter@ game is used by ASI during
parties for fun and to entertain children, and that the game was not used
during the birthday party to promote physical training, strength building, or
physical endurance.  Furthermore, the
parties agreed that Kennedy=s
purpose in playing Athe helicopter@ game
was Asolely
for fun and amusement, not for the purpose of athletics, sports, or exercise@ and
that AMarkel
does not contend that Kennedy was playing the game for the purpose of getting
in better physical condition or to become more physically fit.@








The trial court heard the arguments of counsel
based on the agreed statement of facts. 
The trial court then ruled in favor of Jill, concluding that her medical
expense claim deriving from Kennedy=s injury
did not fall within the exclusion and was therefore covered by the insurance
policy.[3]  The trial court=s
judgment included findings of fact and conclusions of law.

                                     III.
STANDARD OF REVIEW

In an appeal involving an agreed statement of
facts pursuant to Rule 263, we review de novo the issue of whether the trial
court properly applied the law to the agreed facts.  See Tex. R. Civ. P. 263; Panther
Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist., 234 S.W.3d 809, 811
(Tex. App.CDallas 2007, pet. denied); Alma
Group L.L.C. v. Palmer, 143 S.W.3d 840, 843 (Tex. App.CCorpus
Christi 2004, pet. denied); State Farm Lloyds v. Kessler, 932 S.W.2d
732, 735 (Tex. App.CFort Worth 1996, writ
denied).  The agreed facts are binding on
the parties, the trial court, and the reviewing court.  Panther, 234 S.W.3d at 811.  We conclusively presume that the parties have
brought before the court all facts necessary for the presentation and
adjudication of the case.  Cummins
& Walker Oil Co. v. Smith, 814 S.W.2d 884, 886 (Tex. App.CSan
Antonio 1991, no writ).








             IV.  THE TRIAL COURT=S FINDINGS
OF FACT AND LEGAL REASONING

In its second issue, Markel argues that the trial
court erred by making findings of fact in a case submitted pursuant to Rule 263
on an agreed statement of facts.  In its
third issue, Markel contends that the trial court=s
judgment, which contains findings of fact and conclusions of law, reflects that
the trial court applied the wrong legal standard to the issue of whether
Kennedy=s
medical expenses were excluded from coverage under Markel=s
policy.








Concerning Markel=s second
issue, we note that Markel filed with the trial court a request for findings of
fact and conclusions of law. 
Nonetheless, in cases submitted to the trial court on an agreed
statement of facts, no factual issue is "tried" within
the scope of Texas Rule of Civil Procedure 296, which authorizes  findings of fact and conclusions of law.  See Tex. Rule Civ. P. 296; see,
e.g., Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994); Port Arthur
Indep. Sch. Dist. v. Port Arthur Teachers Ass'n, 990 S.W.2d 955, 957B58 (Tex.
App.CBeaumont
1999, pet. denied).  Consequently, in a
case submitted on an agreed statement of facts pursuant to Rule 263, we disregard
any findings of fact made by the trial court. 
See Tex. R. Civ. P. 263; Davis v. State, 904 S.W.2d 946,
950 (Tex. App.CAustin 1995, no writ) (holding
that findings of fact and conclusions of law filed in agreed cases will be
disregarded on appeal); Clean Serve, Inc. v. Kroger Co., No.
01-95-01372-CV, 1996 WL 475806, at *3 (Tex. App.CHouston
[1st Dist.] Aug. 22, 1996, writ denied) (not designated for publication)
(stating that court cannot draw any inference or find any facts not contained
in the agreement unless, as a matter of law, the additional inference or fact
is necessarily compelled by the agreed facts); see also Palmer,
143 S.W.3d at 843 (stating that appellate courts review only whether the trial
court properly applied the law to the stipulated facts).  Because we disregard any findings of fact
made by the trial court, the trial court=s act of
making findings of fact cannot be a ground for reversal on appeal.  We overrule Markel=s second
issue.








Concerning Markel=s third
issue, Markel acknowledges in its brief that we apply a de novo standard of review
to the issue of whether Jill=s claim
for Kennedy=s medical expenses is excluded
under Markel=s policy.  Because we review this legal issue de novo,
the trial court=s reasoning is not relevant to
or controlling of our own de novo review and analysis.  See Port Arthur ISD, 990 S.W.2d at 957B58
(recognizing that A[t]here is no place for . . .
conclusions of law in cases submitted pursuant to Rule 263").  Thus, regardless of the reasoning employed by
the trial court (which we do not consider in conducting our own de novo review),
if the trial court reached the correct result, we will affirm its ruling.  See Gulf Land Co. v. Atlantic Ref. Co.,
134 Tex. 59, 131 S.W.2d 73, 84 (1939) (recognizing the well-settled principle
that an appellate court will sustain the judgment of a trial court if it is
correct regardless of whether the trial court gives the correct legal reason
for the judgment entered, or whether the trial court gives any reason at all); see
also BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002)
(recognizing principle that trial court judgment will not be reversed if trial
court makes erroneous conclusion of law giving wrong reason for an otherwise
correct result).  Consequently, we
overrule Markel=s third issue.

                               V.  INJURY COVERED UNDER POLICY

In its first issue, Markel argues that the trial
court misapplied the law to the present facts because the plain language of its
policy dictates that Kennedy=s injury
sustained during Athe helicopter@ game
constitutes an injury incurred while participating in a ASporting
or Exercise Activit[y]@ and consequently falls within
the policy=s exclusion.  As set forth above, we review this legal
issue de novo, analyzing the application of the law to the agreed statement of
facts.  See Tex. R. Civ. P. 263; Panther,
234 S.W.3d at 811; Palmer, 143 S.W.3d at 843; Kessler, 932 S.W.2d
at 735.

                                    A.
Rules of Construction








We construe insurance policies according to the
same rules of construction that apply to contracts generally.  Nat=l Union
Fire Ins. Co. of Pittsburgh, PA v. Crocker, 246 S.W.3d 603, 606
(Tex. 2008); State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433
(Tex. 1995).  Enforcing the parties=
expressed intent is our primary concern. 
See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex.
1994).  Terms in an insurance contract
will be given their ordinary meaning unless the policy shows that the words
were meant in a technical or different sense. 
Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 736 (Tex.
1990); Sec. Mut. Cas. Co. v. Johnson, 584 S.W.2d 703, 704 (Tex.
1979).  We must read all parts of the
contract together and must strive to give meaning to every sentence, clause,
and word to avoid rendering any portion inoperative.  Balandran v. Safeco Ins. Co. of Am.,
972 S.W.2d 738, 741 (Tex. 1998).  ANo one
phrase, sentence, or section [of the policy] should be isolated from its
setting and considered apart from the other provisions.@  Forbau, 876 S.W.2d at 134.  If terms in the contract can be given a
definite or certain legal meaning, they are not ambiguous, and the court will
construe the contract as a matter of law. 
Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006).  However, if, after applying the rules of
construction identified above, an insurance policy remains ambiguous, we are to
construe the language in a manner that favors coverage.  Beaston, 907 S.W.2d at 433.








Not every difference in the interpretation of a
contract creates an ambiguity.  See
Forbau, 876 S.W.2d at 134.  The mere
disagreement over the meaning of a particular provision in a contract does not
make it ambiguous.  Kelley‑Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1998); GTE
Mobilnet of S. Tex. Ltd. P=ship v.
Telecell Cellular, Inc., 955 S.W.2d 286, 289 n.1 (Tex. App.CHouston
[1st Dist.] 1997, writ denied).  In order
for an ambiguity to exist when the parties advance conflicting interpretations,
both interpretations must be reasonable. 
See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996).

                            B.
The Exclusion is Not Ambiguous;

 AThe Helicopter@ Game is not a Sporting
or Exercise Activity under the Policy

 

The policy exclusion clearly states that the
section in the insurance policy entitled ACoverage
C Medical Payments@ does not apply to AParticipants,
Students, and Members while participating in Athletic, Sporting, or Exercise
Activities.@ 
Neither party argues that a person could read the language of the
exclusion as applying ACoverage
C Medical Payments@ to individuals participating in
such activities.  See generally Fiess,
202 S.W.3d at 747 (stating that clause Awe do
not cover loss caused by mold@ in
insurance policy is not ambiguous because few ordinary people would read it to
say Awe do
too cover loss caused by mold@).








Reading the policy in its entirety, it is clear
that the exclusion is intended to exclude coverage for injuries incurred during
a certain class of physical activities that would otherwise be covered under
the terms of the policy, that is, athletic, sporting, or exercise
activities.  See Forbau, 876
S.W.2d at 134.  Through the agreed
statement of facts, Markel conceded that Athe
helicopter@ game was not an athletic
activity, and both parties agree that the terms ASporting
or Exercise Activities@ should be given their plain and
ordinary meaning in determining whether Athe
helicopter@ game is a ASporting
or Exercise Activit[y]@; the parties simply disagree
about the plain and ordinary meaning of these words.  The mere disagreement by the parties as to
the plain and ordinary meaning of ASporting
or Exercise Activities@ does not make the exclusion
ambiguous.  See Kelley‑Coppedge,
Inc., 980 S.W.2d at 465; GTE Mobilnet, 955 S.W.2d at 289 n.1.  Only when, after applying the applicable
rules of construction, a contract term is susceptible of two or more reasonable
interpretations will the term be ambiguous. 
Glover v. Nat=l Ins.
Underwriters, 545 S.W.2d 755, 761 (Tex. 1977).  We hold that the language of the exclusion is
not ambiguous; we look to the plain language of the exclusion to determine
whether Jill=s claim for Kennedy=s
medical expenses is covered under Markel=s
policy.








In determining the ordinary and generally
accepted meaning of an undefined term in an unambiguous insurance policy
provision, Texas courts may consult dictionaries.  See Mescalero Energy, Inc. v. Underwriters
Indem. Gen. Agency, Inc., 56 S.W.3d 313, 320 (Tex. App.CHouston
[1st Dist.] 2001, pet. denied) (stating that Texas courts often look to
dictionaries to determine ordinary and generally accepted meanings of contract
terms); see also Fiess, 202 S.W.3d at 751 & n.30 (consulting Webster=s New
Collegiate Dictionary for meaning of Aotherwise@ in an
insurance policy).  Consulting
dictionaries to determine the plain and ordinary meaning of AExercise
or Sporting Activities,@ one dictionary defines Aexercise@ as Abodily
or mental exertion, especially for the sake of training or improvement of
health.@  Dictionary.com, Exercise,
http://dictionary.reference.com/browse/exercise (last visited July 24,
2009).  Another dictionary definition of Aexercise@Cthe one
posited by MarkelCis an Aactivity
requiring physical or mental exertion, especially when performed to maintain or
develop fitness.@

As generally understood and reasonably construed,
the definition of Aexercise@
includes an intent requirementCto
maintain and develop physical fitness, or to train or to improve health.  The parties= agreed
statement of facts, however, indicates that Athe
helicopter@ game was a birthday party
activity intended for fun and not used to promote physical training, strength
building, or physical endurance.








Markel nonetheless argues on appeal, utilizing
its proposed dictionary definition of Aexercise@ as an Aactivity
requiring physical or mental exertion, especially when performed to maintain or
develop fitness,@ that Aespecially@ does
not mean Aonly@ and
that Aexercise@ is any
activity that Amerely requires physical or
mental exertion.@ 
Markel claims that jumping over a rope during a game is an activity
requiring physical exertion and therefore constitutes exercise.  However, this interpretation of exercise is
unreasonable and renders the entire policy meaningless because virtually all
activities require some level of physical or mental exertion.  See Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983) (noting that insurance policy must be construed to give effect
to all terms so that none are rendered meaningless).  Markel suggests that the policy may have
covered Kennedy=s injury had it been incurred by
Kennedy=s
slipping on water on the floor while walking to the bathroom.  But under the broad definition of Aexercise@ urged
by Markel, an injury incurred by merely walking to the bathroomCan
activity which clearly constitutes some physical exertionCwould be
excluded from coverage as an exercise activity. 
We will not construe contracts to produce an absurd result when a
reasonable alternative construction exists. 
S. County Mut. Ins. v. Surety Bank, N.A., 270 S.W.3d 684, 689
(Tex. App.CFort Worth 2008, no pet.).

We hold that Athe
helicopter@ game played at the birthday
party was not an AExercise  Activit[y]@ under
the plain language of the exclusion. 








Markel
next argues that Athe helicopter@ game is
a sporting activity.  ASport@ is
defined as Aathletic activity requiring
skill or physical prowess and often of a competitive nature, [such] as racing,
baseball, tennis, golf, bowling, wrestling, boxing, hunting, fishing, etc.@  Dictionary.com, Sport,
http://dictionary.reference.com/browse/sport (last visited July 24, 2009).  The 
definition of Asport@ refers
to an Aathletic
activity,@ and the parties= agreed
statement of facts acknowledges that Athe
helicopter@ game is not an Aathletic
activity.@ 
Furthermore, the parties= agreed
statement of facts indicates that Athe
helicopter@ game is designed as an activity
for children to participate in while at a birthday party and does not require
any particular skill or physical prowess. 
The parties= agreed statement of facts does
not suggest that Athe helicopter@ game
was of a competitive nature.  To the
contrary, the agreed statement of facts clearly states that the game was
intended solely for fun and entertainment. 
Consequently, we hold that Athe
helicopter@ game is not a sporting activity
under the plain language of the exclusion.

Because
we have held that Athe helicopter@ game is
not a ASporting
or Exercise Activit[y]@ under the plain language of the
exclusion, we hold that the trial court did not err by rendering judgment
against Markel that Jill=s medical expense claim is
covered under the insurance policy.  We
overrule Markel=s first issue.








                                          VI.
CONCLUSION

Having overruled Markel=s three
issues, we affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

 

DELIVERED: August 6, 2009











[1]See Tex. R. Civ. P. 263
(providing for submission of agreed statements of facts) (hereinafter ARule 263").





[2]Markel does not contend
that Athe helicopter@ game constituted AAthletic . . . Activit[y]@ under the policy
exclusion.





[3]In addition to the
medical expense claim, Jill asserted claims against Markel for breach of
contract and violations of chapter 542 of the Texas Insurance Code.  Following the trial court=s judgment on the agreed
statement of facts, the trial court severed the issue of whether the policy
exclusion applied to Jill=s medical expense claim
from the breach of contract and statutory violation claims, rendering the
judgment on that issue final and appealable.